UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOHN REITER,                                        :

                   Plaintiff,              :        01 Civ. 2762 (GWG)

    -v.-                                           :        <u>OPINION AND ORDER</u>

METROPOLITAN TRANSPORTATION             :
AUTHORITY OF THE STATE OF NEW YORK,
MTA NEW YORK CITY TRANSIT, and          :
MYSORE L. NAGARAJA, P.E., Individually and
as Senior Vice President and Chief Engineer,    :

               Defendants.             :
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

<u>APPEARANCES OF COUNSEL</u>

For Plaintiff:

       Gregory G. Smith, Esq.
       Gregory Smith & Associates
       225 Broadway, Suite 3601
       New York, NY 10007-1901

For Defendant New York City Transit Authority:

       Steven M. Stimell, Esq.
       Jay P. Warren, Esq.
       Bryan Cave LLP
       1290 Avenue of the Americas
       New York, NY 10104

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   A. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      1. Reiter's 2003 Fee Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      2. Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      3. Reiter's Current Fee Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   A. Reasonable Hourly Rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      1. Difficulty of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      2. Counsel's Customary Rates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      3. Experience of Attorneys . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      4. Survey Evidence/Awards in Other Cases . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      5. Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
   B. Reasonable Hours . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
      1. First Application: Time Expended Through Judgment . . . . . . . . . . . . . . . . 19
         a. Hours to be Eliminated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            i. Time Spent on Plaintiff's Motion for Summary Judgment . . 20
           ii. Time Spent on Plaintiff's Two Motions to Strike . . . . . . . . 21
          iii. Time Summaries That Do Not Match Contemporaneous
                Records. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
          iv. Summary of Time To Be Eliminated . . . . . . . . . . . . . . . . . . . 24
         b. Percentage Reduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
            i. Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
           ii. Pursuit of Unsuccessful Claims . . . . . . . . . . . . . . . . . . . . . . . 26
          iii. Time Spent After the NYCTA Offered to Reinstate Reiter
                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
          iv. Evidence of Excessive Time Spent . . . . . . . . . . . . . . . . . . . . 29
          v. Vague Entries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
         c. Conclusion as to Percentage Reduction . . . . . . . . . . . . . . . . . . . . . . 30
         d. The Request for Overall Reduction for Lack of Success . . . . . . . . . 31
         e. Conclusion as to First Application . . . . . . . . . . . . . . . . . . . . . . . . . 34
      2. Second Application: Entry of Judgment to Present . . . . . . . . . . . . . . . . . 34
         a. Hours to Be Eliminated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
         b. Claims as to Excessive Hours . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
         c. Conclusion as to the Second Application . . . . . . . . . . . . . . . . . . . . 40
   C. Expenses and Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
      1. Costs Related to the First Fee Application . . . . . . . . . . . . . . . . . . . . . . . . . 41
      2. Costs Related to the Second Fee Application . . . . . . . . . . . . . . . . . . . . . . 43

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOHN REITER,                                        :

                Plaintiff,                    :        01 Civ. 2762 (GWG)

               -v.-                           :        <u>OPINION AND ORDER</u>

METROPOLITAN TRANSPORTATION              :
AUTHORITY OF THE STATE OF NEW YORK,
MTA NEW YORK CITY TRANSIT, and           :
MYSORE L. NAGARAJA, P.E., Individually and
as Senior Vice President and Chief Engineer,   :

              Defendants.                   :
----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

John Reiter brought this action in April 2001 against his employer, the New York City Transit

Authority ("NYCTA"); his former supervisor Mysore L. Nagaraja; and the Metropolitan

Transportation Authority of the State of New York.  Following a jury trial, he obtained damages

and injunctive relief based on retaliatory conduct that he suffered as an employee of the

NYCTA.  Reiter has made an application for attorney's fees.  The parties have consented to

disposition of this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

I.  <u>INTRODUCTION</u>

      A.  <u>Factual Background</u>

           1.  <u>Reiter's 2003 Fee Application</u>

      The vast majority of the claims Reiter originally made in his complaint were dismissed as

a result of a summary judgment motion by defendant.  <u>Reiter v. Metro. Transp. Auth.</u>, 2002 WL

31190167 (S.D.N.Y. Sept. 30, 2002) (JGK) ("<u>Reiter I</u>").  The remaining claim, for retaliation,

was the subject of a jury trial held in 2003.  The jury found that the NYCTA had unlawfully

retaliated against Reiter when it demoted him in response to his filing a complaint with the Equal Employment Opportunity Commission and awarded him $140,000 in pain and suffering, a sum the trial court later reduced to $10,000 on defendants' motion for remittitur.  See Reiter v. Metro. Transp. Auth., 2003 WL 22271223, at *6, 8-11 (S.D.N.Y. Sept. 30, 2003) (JGK) ("Reiter II"). After trial, Reiter moved for equitable relief pursuant to 42 U.S.C. 2000e-5(g)(1), including, inter alia, reinstatement.  The Court granted reinstatement, but denied the remainder of Reiter's demand for equitable relief.  Id. at *13-16.  In November 2003, Reiter moved for attorney's fees and costs.[1]

In the 2003 application, Reiter sought $457,155 in fees for 1,713.30 hours of work performed by three attorneys who represented him during his court proceedings as well as court costs.  See Pl. First Mot.  Reiter arrived at that figure by presenting a total of 1,713.30 hours at a rate of $350 per hour for work by attorneys Gregory Smith and Janet Lennon and $150 per hour for attorney Charlesa London.  In ruling on that application, this Court concluded that Reiter could not recover fees incurred subsequent to the Offer of Judgment made by the defendants.

---

[1] See Motion for Attorney's Attorney's [sic] Fees and Costs, filed Nov. 12, 2003 (Docket #93) ("Pl. First Mot."); Affirmation [of Gregory G. Smith] in Support of Motion for Attorney's Fees and Expenses, dated Nov. 12, 2003 (attached to Pl. First Mot.) ("Smith Aff."); Affirmation [of Janet Lennon] in Support of Motion for Attorney's Fees and Expenses, dated Nov. 12, 2003 (attached to Pl. Mot.) ("Lennon Aff."); Affirmation [of Charlesa E. London] in Support of Motion for Attorney's Fees and Expenses, dated Nov. 12, 2003 (attached to Pl. First Mot.) ("London Aff."); Memorandum of Points and Authorities in Support of Motion for Attorney's Fees and Expenses, filed Nov. 12, 2003 (Docket #94) ("Pl. First Mem."); Affirmation of Steven M. Stimell in Opposition to Plaintiff's Motion for Attorneys' Fees and Costs, filed Mar. 3, 2004 (Docket #104); Defendant's [sic] Memorandum of Law in Opposition to Plaintiff's Motion for Attorneys' Fees and Costs, filed Mar. 3, 2004 (Docket #105) ("Def. First Mem."); Plaintiff's Memorandum of Law in Reply in Further Support of His Motion for Attorneys' Fees and Costs, filed May 3, 2004 (Docket #112) ("Pl. First Reply Mem."); Declaration of Gregory G. Smith in Further Support of Plaintiff's Application for Attorneys' Fees and Costs, filed May 3, 2004 (Docket #113).

See Reiter v. Metro. Transp. Auth., 224 F.R.D. 157, 169 (S.D.N.Y. 2004) (GWG) ("Reiter III").

As to the work of Reiter's counsel prior to that date, the Court concluded that Reiter's counsel

had presented insufficient evidence as to an appropriate fee for his services and awarded a fee of

$200 per hour to Smith and Lennon based on the $175 per hour fee set forth in Reiter's retainer

agreement as adjusted for inflation.  See Reiter v. Metro. Transp. Auth., 2004 WL 2072369, at

*8 (S.D.N.Y. Sept. 10, 2004) (GWG) ("Reiter IV").  As a result, judgment was entered for

$17,075.42 in attorney's fees and costs.

### 2. Appeal

Reiter appealed the judgment, and the Second Circuit affirmed in part and reversed and

remanded in part.  The Second Circuit ruled that Reiter was entitled to attorney's fees that arose

after the Offer of Judgment.  Reiter v. MTA New York City Transit Auth., 457 F.3d 224, 229-32

(2d Cir. 2006) ("Reiter V"), cert. denied, 127 S. Ct. 1331 (2007).  In addition, the Second Circuit

concluded that this Court had not given "appropriate weight" to evidence in the record that

Reiter's attorneys had "set the retainer rate because, in part, they were offering a discount to a

plaintiff in a civil rights case."  Id. at 233.  Accordingly, it remanded the case for "additional

consideration" of the appropriate rate for plaintiff's attorneys.  Id.

### 3. Reiter's Current Fee Application

Following remand, Reiter supplemented his previous motion for attorney's fees to

include time spent for the 2003 fee application, the appeal to the Second Circuit, and the

supplemental fee application itself.[2]  Reiter now seeks an award of $877,575.00 in attorney's

---

[2] See Notice of Supplemental Motion for Attorneys' Fees, filed on Nov. 30, 2006 (Docket #126); Affirmation [of Gregory Smith], filed Nov. 30, 2006 (Docket #127) ("Supp. Smith Aff."); Memorandum of Points and Authorities in Support of Supplemental Motion for

fees – for 2,056 hours of work performed by Smith, Lennon, and London.  Pl. Supp. Mem. at 1.

He has raised the hourly rate for which he seeks compensation to $500 per hour for the work

performed by Smith and Lennon and $300 per hour for work by London.  See id. at 1 n.1.  The

defendants challenge the rates claimed in Reiter's supplemental fee application as well as the

hours sought.

II.  DISCUSSION

        42 U.S.C. § 2000e-5(k) provides that a "prevailing party" in an action under Title VII

may recover, in the court's discretion, "a reasonable attorney's fee (including expert fees) as part

of the costs."  See, e.g., Am. Fed'n of State, County & Mun. Employees v. County of Nassau, 96

F.3d 644, 650 (2d Cir. 1996) ("An award of fees under Title VII is within the discretion of the

trial court . . . .") (internal quotation marks and citation omitted), cert. denied, 520 U.S. 1104

(1997).  The jury's verdict in Reiter's favor makes him a "prevailing party" and, because there

are no "special circumstances" justifying a denial of fees, he is entitled to recover reasonable

attorney's fees as part of the costs assessed against the defendants.  See, e.g., Albermarle Paper

Co. v. Moody, 422 U.S. 405, 414-415 (1975) (discussing Newman v. Piggie Park Enters., 390

U.S. 400 (1968)).

---

Attorney's Fees and Expenses, filed Nov. 30, 2006 (Docket #128) ("Pl. Supp. Mem.");
Defendant's [sic] Memorandum of Law in Opposition to Plaintiff's Supplemental Motion for
Attorneys' Fees, filed Jan. 22, 2007 (Docket #130) ("Def. Supp. Mem."); Declaration of Jay P.
Warren, dated Jan. 18, 2007 ("Warren Decl.") (attached to Def. Supp Mem.); Declaration of
Steven M. Stimell, dated Jan. 18, 2007 (attached to Def. Supp. Mem.) ("Stimell Supp. Decl.");
Smith Affirmation in Further Support of Supplemental Fees and Expenses, filed Mar. 13, 2007
(Docket #131) ("Smith Supp. Reply Aff."); Plaintiff's Reply Memorandum of Law in Further
Support of His Supplemental Attorneys' Fees and Costs Application, dated Mar. 12, 2007
(Docket #133) ("Pl. Supp. Reply Mem."); Letter from Jay P. Warren, dated Mar. 21, 2007
(Docket #134) ("Sur-Reply"); Letter from Gregory G. Smith, dated Apr. 6, 2007 (Docket
#132) ("Sur-Sur-Reply").

_____As the Second Circuit noted in its recent decision in <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 493 F.3d 110 (2d Cir. 2007), "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate . . . ."  <u>Id.</u> at 114 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)).  This figure has commonly been referred to as the "lodestar" – a term that <u>Arbor Hill</u> eschews in favor of the term "presumptively reasonable fee."  <u>Id.</u> at 111.

    A.  <u>Reasonable Hourly Rate</u>

<u>Arbor Hill</u> made clear that a "reasonable" hourly rate is "what a reasonable, paying client would be willing to pay . . . ."  <u>Id.</u> at 112.  Thus, "the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively."  <u>Id.</u>  In addition, the rate to be set for Reiter's attorneys must be "'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  <u>Reiter V</u>, 457 F.3d at 232 (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984)).

To determine an appropriate hourly rate, <u>Arbor Hill</u> directs that a court should engage in the following process

> the district court, in exercising its considerable discretion, [is] to bear in mind <u>all</u> of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay.  In determining what rate a paying client would be willing to pay, the district court should consider, among others, the <u>Johnson</u> factors; it should also bear in mind

5

> that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

493 F.3d at 117-18 (emphasis in original).  The "Johnson factors" are those originally laid out in

the case of Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), abrogated on

other grounds, Blanchard v. Bergeron, 489 U.S. 87, 92-93 (1989).  These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 493 F.3d at 114 n.3 (citing Johnson, 488 F.2d at 717-19).

Arbor Hill specifically identified the following factors to be considered in determining

what a reasonable, paying client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) the attorney expected from the representation.

Id. at 112.

The fee applicant bears the burden of establishing the reasonableness of the hourly rates

requested – in particular, by producing satisfactory evidence that the requested rates are in line

with those prevailing in the community.  Blum, 465 U.S. at 895 n.11; 601 W. Assocs. LLC v. Kleiser-Walczak Constr. Co., 2004 WL 1117901, at *3-4 (S.D.N.Y. May 18, 2004).

In his original application, submitted in November 2003, Smith sought $350 per hour for himself (and Lennon) and $150 per hour for London.  See Pl. First Mot.  Smith now requests hourly rates of $500 for himself and Lennon, and $300 for London.  See Pl. Supp. Mem. at 1 n.1.  Reiter states that even if "$350 per hour was the prevailing rate in the Southern District of New York when plaintiff made his first fee application," see Pl. Supp. Reply Mem. at 5, "[t]wo plus years have since passed and arguably the rates in the Southern District of New York have gone up."  Id.

Reiter's own briefing with respect to the Johnson factors or any other factors relied upon by the Second Circuit has been cursory: he did not review them at all in his initial memorandum of law and reviews them in just one of his submissions, and there only briefly.  See Pl. First Reply Mem. at 17-19.  While we have considered all the Johnson factors as well as the other factors summarized in Arbor Hill, some of them do not support either an increase or a decrease in the hourly rate and/or have not been argued or briefed by the parties.  Thus, we discuss below only those most pertinent to our conclusion as to the appropriate hourly rate.

Specifically, we discuss in separate sections below (1) the difficulty of the case – which encompasses the novelty and complexity of the issues and the level of skill required to perform the legal services properly; (2) information as to counsel's customary hourly rates; (3) counsel's experience, reputation, and abilities; and (4) awards in similar cases.  With respect to the results obtained, we follow what has been the prevailing practice in this Circuit and consider this

question in a later section that discusses whether there should be an adjustment in the presumptively reasonable fee based on limited success.  See section II.B.1.d below.

    1.  Difficulty of the Case

    At the outset, the Court notes that this case involved a single plaintiff and the testimony of seven witnesses, including plaintiff and his wife, over a six-day trial.  Reiter II, 2003 WL 22271223, at *1, 5.  As is discussed further below, the Court had previously dismissed many of Reiter's claims and allowed but a single retaliation claim to go to the jury.  See Reiter I, 2002 WL 31190167, at *14.  The only monetary damages Reiter sought from the jury was compensation for pain and suffering.  Reiter II, 2003 WL 22271223, at *1.  Questions of equitable relief were decided by the district judge.  Id. at *13-16.

    There is nothing to suggest that this case was particularly novel or complex.  No discovery or other disputes were the subject of any court briefing until the summary judgment motions were filed – an event that took place approximately eight months after the defendants answered.  Plaintiff deposed six witnesses.  See id.  Notably, Reiter made this case more complex than it needed to be given that, following discovery, he pursued numerous claims that were ultimately dismissed by the district court.  See generally Ricard v. Kraft Gen. Foods, Inc., 1993 WL 385129, at *3 (S.D.N.Y. Mar. 16, 1993) ("It is not generally speaking, a good litigation tactic to attempt to ride several different legal causes of action at trial . . . . [This] approach . . . increas[es] the information which must be reviewed in order to determine whether a genuine issue of material fact exists."), aff'd, 17 F.3d 1426 (2d Cir.1994).  Finally, no inference of complexity should be taken from the fact that the case was originally filed in 2001.  The discovery period of approximately six months was in line with, if not shorter than, the

discovery period in many cases of this type.  The trial was not lengthy.  The vast bulk of time

spent since the filing of the complaint has been devoted to the dispute over attorney's fees.

    2.  <u>Counsel's Customary Rates</u>

One of the <u>Johnson</u> factors that seems particularly helpful in determining the maximum

ceiling of "what a reasonable, paying client would be willing to pay," <u>see</u> <u>Arbor Hill</u>, 493 F.3d at

112, for a particular attorney's services is that attorney's "customary hourly rates."  <u>Id.</u> at 114

n.3 (citing <u>Johnson</u>, 488 F.2d at 718).  In calculating "what rate a paying client would be willing

to pay," <u>id.</u> at 112, a paying client normally would have no reason to pay more than the

attorney's customary rate.

In plaintiff's original application, he supplied no information as to his own customary

rates.  Defendants in their opposition papers argued that there were a number of deficiencies in

plaintiff's application, including that there was no evidence that his lead counsel, Smith,

"actually" charged clients anything more than $200 per hour.  Def. First Mem. at 15.  In his reply

papers, plaintiff cursorily argued the <u>Johnson</u> factors, <u>see</u> Pl. First Reply Mem. at 17-19, but still

gave no evidence as to his attorney's "customary hourly rate."

After remand from the Second Circuit, the Court held a conference at which it informed

Smith that he needed "to provide evidence of what you actually charged clients," and, more

broadly, that the Court had "not been given help . . . as to what . . . a proper rate is, other than

what [is] contained in case law," <u>see</u> Transcript, dated Oct. 30, 2006 (Docket #137), at 4, 6-7 –

referring to Reiter's citation of case law as the exclusive evidence that he had provided as to the

market rate for his counsel's services.

9

In the supplemental briefing, Reiter and the defendants submitted some of Smith's retainer agreements in criminal cases.  Defendants have appended three of Smith's retainer agreements, dated April 12, 2005, May 4, 2005, and July 16, 2006, which all provide for payment of a flat fee for certain services in defending a criminal case but also specify hourly rates for additional services of between $250 to $350 per hour.  Def. Supp. Mem. at 6-7; see also Smith Retainer Agreements (appended to Smith Affirmation in Response to Letter Written by Jay P. Warren, dated Nov. 20, 2006) (reproduced as Ex. A to Warren Decl.).  Smith has one retainer agreement for a "complex criminal tax case" currently pending in this district that calls for $350 per hour for all pre-trial services and for disposition of the case prior to trial and $450 per hour for the trial of the case.  Pl. Supp. Reply Mem. at 8-9; see also Letter from Gregory G. Smith, dated Apr. 26, 2007 (Docket #136) (retainer agreement for representation on a 2007 criminal drug conspiracy charge; flat rate but "in case of dispute," $450/hour in and out of court).  There is no evidence as to whether the hourly billable rate was actually paid to Smith on any of these cases.

In any event, these rates may be appropriate with respect to payment to Smith on criminal matters but not with respect to civil cases.  As is described further in the next section, Smith has extensive criminal experience but, as of 2001 – the date Reiter retained Smith – little civil experience.  As a result, his hourly rate for criminal cases is of limited utility for purposes of determining an appropriate rate in this civil case.  Notably, plaintiff has supplied no agreements with respect to any civil cases for any of the three attorneys in this matter.  Nor have these counsel even asserted that they have ever been paid an hourly rate for civil cases.

10

### 3.  Experience of Attorneys

To support his originally-sought rates, Reiter submitted London and Lennon's résumés as well as affidavits from all three attorneys which described their experience in general terms.  See Smith Aff.; Lennon Aff.; London Aff.; see also Résumés (reproduced in Ex. 1 of Pl. First Mot.).  Both Smith and Lennon have significant criminal experience.  Smith was admitted in 1988, and worked in the New York County District Attorney's Office from that year until 1995.  See Smith Aff. ¶ 4.  Lennon has been practicing since 1981: she has spent time at the Office of the Special Narcotics Prosecutor, the New York County District Attorney's Office, and the New York City Police Department.  See Lennon Résumé.  As to their experience in civil matters, the record is sparse.  Smith's affidavit gives only the most generic descriptions of his civil experience.  Smith Aff. ¶ 4.  He offers no discussion of his experience in employment cases – such as descriptions or number of cases filed prior to bringing Reiter's suit, or any other details of what these litigations entailed.  Both attorneys indicate only that they "completed several employment discrimination cases in the Southern and Eastern Districts of New York[,] all but the instant case settling out of court for money damages."  Pl. Reply Mem. at 16.  Smith was admitted to the federal court bar only in 1998 – three years before the litigation began.  Def. First Mem. at 19.

Less information has been provided concerning London.  It would appear from her résumé that she was admitted to the New York State Bar in either 2000 or 2001 and that, prior to becoming employed with Smith's solo practice in September 2001, she worked at a New York

11

City firm handling largely criminal matters.  See Résumé of Charlesa E. London, undated (reproduced in Ex. 1 to Pl. First Mot.), at 1.[3]

The lack of significant experience of Reiter's attorneys in employment discrimination matters is important to the analysis of rates inasmuch as this Court can only award the prevailing market rate for counsel of "similar experience and skill" to Reiter's counsel.  Farbotko v. Clinton County, 433 F.3d 204, 209 (2d Cir. 2005).

### 4.  Survey Evidence/Awards in Other Cases

Reiter has submitted a survey published in 2005 by the National Law Journal which lists fee rates for large law firms in Manhattan.  See Ex. 4 to Supp. Smith Aff.  Reiter argues that the rates at Manhattan's largest law firms are "the best evidence for assessing the market rate here in the Southern District of New York."  Pl. Supp. Reply Mem. at 10.  There are several problems with this contention.  First, the focus on the rates charged by the most expensive firms in this district is inappropriate given that the rate at which counsel is to be compensated here is the rate that would be paid by a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively."  Arbor Hill, 493 F.3d at 112 (emphasis added).  Reiter has not shown that the rates charged by the large firms in these surveys are the sort of rates that a reasonable plaintiff in an employment discrimination suit would pay.

Next, Reiter has submitted no evidence that these firms are in the relevant market for determining his attorney's rates.  Reiter must show that these large firms are providing "similar services" and that their lawyers are of "'reasonably comparable skill, experience, and

---

[3] While Smith and Lennon themselves offer no useful description of their civil experience, the additional information provided by defendants shows that it was very limited as of 2001.  See Def. Supp. Mem. at 7 n.3.

reputation.'" Reiter V, 457 F.3d at 232 (quoting Blum, 465 U.S. at 896 n.11).  Reiter has not

shown that his counsel have the same "skill, experience, and reputation" in the area of civil

litigation as the attorneys in these firms.  Id.  As noted in the previous section, as of 2001,

counsel had extremely limited experience in civil litigation, let alone employment litigation.  Nor

has Reiter shown that his counsel's firm, which appears to have been essentially a solo practice

during the relevant time period, has the "reputation" accorded to the firms listed in the survey.

Whether it justifies their rates or not, the fact is that the large firms listed on the survey

have acquired a reputation that allows them to command high rates in the market.  Many other

firms, in particular smaller firms that may be providing equally capable services, simply do not

command anywhere near such rates when it comes to areas such as employment law litigation.

This Court's knowledge of the range in rates charged by practitioners is based on its own

experience largely as a result of its participation in settlement conferences where attorney rates

are frequently revealed in private discussions with the Court.  See generally McDonald ex rel

Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96-97 (2d Cir.

2006) ("A district court may also use its knowledge of the relevant market when determining the

reasonable hourly rate.") (citing Miele v. New York State Teamsters Conference Pension & Ret.

Fund, 831 F.2d 407, 409 (2d Cir. 1987)); Farbotko, 433 F.3d at 209 (court may consider its "own

familiarity with the rates prevailing in the district").

The Court recognizes that high rates have been awarded to counsel at smaller firms

where counsel is highly experienced in a particular area of litigation.  See, e.g., Bernier v.

Papagianopolous, 2006 WL 2819590, at *1-2 & n.2 (S.D.N.Y. Oct. 2, 2006) ("an experienced

litigator in this area" compensated at $400/hour); Ashkinazi v. Sapir, 2005 WL 1123732, at *3

(S.D.N.Y. May 10, 2005) ($425/hour for partner in small firm who had 26 years of experience and specialized in employment law); Raniola v. Bratton, 2003 WL 1907865, at *6 n.9 (S.D.N.Y. Apr. 21, 2003) ($400/hour for "experienced" attorney at a small firm).[4] But case law is also replete with instances where experienced attorneys have been awarded lower rates.  See Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 370 (S.D.N.Y. 2005) ($250/hour for lead attorney and $125/hour for junior attorney at small firm of three full-time attorneys); Pascuiti v. New York Yankees, 108 F. Supp. 2d 258, 266 (S.D.N.Y. 2000) (awarding $250/hour for attorneys with almost 30 years experience in civil rights litigation); see also Cowan v. Ernest Codelia, P.C., 2001 WL 30501, at *10 (S.D.N.Y. Jan. 12, 2001) (awarding a sole practitioner who had been an "active civil rights litigator for many years" an hourly rate of $250), aff'd, 50 Fed. Appx. 36 (2d Cir. 2002).  In Pascuiti, the court surveyed case law on hourly rates and found that as of 2000, "the range of fees in this District for 'seasoned civil rights litigators,' particularly those in small firms, is between $200/hr and $300/hr."  108 F. Supp. 2d at 266.  The Court notes that a recent survey of case law found that "[w]ithin the last five years, courts have approved rates ranging from $250 to $425 per hour for work done by partners in small firms in this

------

[4] Reiter's citation to other cases where high rates were awarded, see Pl. Supp. Reply Mem. at 5-7, typically involved attorneys with significant civil rights experience.  See, e.g., Sheehan v. Metro. Life Ins. Co., 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) ($425/hour reasonable for partner with "decades of experience," who delivered an "effective and thoroughly professional performance"); Kuper v. Empire Blue Cross & Blue Shield, 2003 WL 233350111, at *9-10 (S.D.N.Y. Dec. 18, 2003) ($425/hour reasonable for attorney with "thirty-five years of litigation experience in the fields of labor and employment law, particularly employment discrimination"), adopted by, 2004 WL 97685 (S.D.N.Y. Jan. 20, 2004); New York State Nat'l Org. for Women v. Pataki, 2003 WL 2006608, at *2-3 (S.D.N.Y. Apr. 30, 2003) ($400/hour and $430/hour reasonable for two attorneys who "both have more than 30 years of experience with civil rights and labor and employment law").

district." Access 4 All, Inc. v. Park Lane Hotel, Inc., 2005 WL 3338555, at *4 (S.D.N.Y. Dec. 7, 2005).

Smith does not represent himself or either of his associates on this case to be "seasoned civil rights litigators" such that they could command a higher rate. Nor has Smith pointed to any evidence suggesting that their practice has garnered a reputation as a leader in any area of the law, received public recognition, or even been involved in significant litigation in the employment law area. Based on the evidence before the Court, Smith's hourly rate must fall at the far lower end of the scale of reasonable rates for employment discrimination litigators.

5. Summary

Reiter has failed to meet his burden "to produce satisfactory evidence in addition to the attorney's own affidavits showing that the requested rates are at the prevailing market level." Paulino v. Upper W. Side Parking Garage, Inc., 1999 WL 325363, at *3 (S.D.N.Y. May 20, 1999) (citing, inter alia, Blum, 465 U.S. at 896 n.11). The Court's task has been made particularly difficult because Smith has not submitted evidence with respect to what other employment discrimination attorneys with his level of experience charge for an hourly rate. See Ace Ltd. v. Cigna Corp., 2001 WL 1286247, at *5 (S.D.N.Y. Oct. 22, 2001) ("Ideally, . . . evidence [as to hourly rate] should include affidavits from attorneys with similar qualifications stating the precise fees typically charged and paid, during the relevant time period, in the relevant market.") (internal quotation omitted) (citing Nat'l Helicopter Corp. of Am. v. City of New York, 1999 WL 562031, at *6 (S.D.N.Y. July 30, 1999)); Altman v. Port Auth., 879 F. Supp. 345, 353 (S.D.N.Y. 1995) (attorney requesting fees "submitted affidavits from three

15

attorneys with substantial experience in employment discrimination cases" who attested to appropriateness of the requested hourly rates).

Based on all the factors discussed above, especially including Smith's relative inexperience in civil litigation in general and employment litigation in particular, the Court concludes that a current rate of $275 per hour for Smith would be appropriate.[5]  While Lennon seemingly has greater civil trial experience than Smith, see Pl. Supp. Reply Mem. at 7, it is not significantly greater and thus a rate of $275 per hour would be an appropriate current rate for her as well.  Reiter's November 2003 application reflects that he sought only $150 per hour for London's time, which was less than half the rate being sought by Reiter and Lennon.  In light of London's inexperience, and the determination that Smith and Lennon should command $275 per hour, the Court concludes that $150 per hour would be an appropriate current rate for Lennon. See, e.g., Tlacoapa, 386 F. Supp. 2d at 370 ($125/hour for junior attorney) (citing Lawson v. City of New York, 2000 WL 1617014, at *4-5 (S.D.N.Y. Oct. 27, 2000)).  Certainly, there are practitioners who charge more than these rates.  But, in this Court's experience, practitioners with experience similar to Smith and Lennon, particularly those in solo practices and smaller firms, charge these rates or even less in some instances.  The Court finds that the rates it awards here are "what a reasonable, paying client would be willing to pay," Arbor Hill, 493 F.3d at 112,

---

[5] A current rate is being applied as it is well-established that where, as here, litigation spans a number of years, the reasonable hourly rate should be adjusted to account for "the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value."  Missouri v. Jenkins, 491 U.S. 274, 282 (1989) (internal quotation marks and citation omitted); accord Raniola, 2003 WL 1907865, at *6.

particularly keeping in mind the client "wishes to pay the least amount necessary to litigate the case effectively." Id.[6]

B. Reasonable Hours

The second step in computing the "presumptively reasonable fee" – which we shall occasionally refer to as the "lodestar" – is the calculation of reasonable hours.

It is well established that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specifying, for each attorney, the date, the hours expended, and the nature of the work done." New York State Assoc. for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); accord Sowemimo v. D.A.O.R. Sec., Inc., 2000 WL 890229, at *4 (S.D.N.Y. June 30, 2000), aff'd, 1 Fed. Appx. 82 (2d Cir. 2001). The Court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). The critical inquiry is "whether, at the time the work was performed, a reasonable attorney

---

[6] Defendants make various arguments that scattered hours submitted by plaintiff should be billed at a lesser rate because they involved paralegal rather than attorney tasks. See Def. Supp. Mem. at 23-24. Because the Court is engaging in across the board reductions of hours, see section II.B.1.b & section II.B.2.b-c below, it will exercise its discretion to not subtract hours or reduce rates for the relatively minor number of hours that might be characterized as involving non-attorney tasks.

The Court notes further that it rejects the defendants' argument, Def. Supp. Mem. at 24, n.22, that time spent by London reading and digesting deposition transcripts were necessarily those of a paralegal. The same is true for the preparation of trial notebooks. See Raniola, 2003 WL 1907865, at *5 & n.8 ("a very junior attorney . . . was properly assigned to [handle the trial notebooks], particularly in view of the fact that the plaintiff's attorneys were all either single practitioners or belonged to a very small firm . . . [and l]arger firms are more likely to have a staff of paralegals").

would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992), cert. denied, 506 U.S. 1053 (1993); accord Nike, Inc. v. Top Brand Co., 2006 WL 2946472, at *5 (S.D.N.Y. Feb. 27, 2006), adopted by, 2006 WL 288443 (S.D.N.Y. Oct. 6, 2006). In addressing this question, courts should not, however, engage in "an ex post facto determination of whether attorney hours were necessary to the relief obtained." Grant, 973 F.2d at 99.

Additionally, the law requires that if a court finds that claimed hours are "excessive, redundant, or otherwise unnecessary," it should exclude those hours from its "lodestar" calculation. Hensley, 461 U.S. at 434; accord Quaratino v. Tiffany & Co., 166 F.3d 422, 426 n.6 (2d Cir. 1999); Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998); Luciano v. Olsten Corp., 109 F.3d 111, 116-17 (2d Cir. 1997); In re Stock Exch. Options Trading Antitrust Litig., 2006 WL 3498590, at *11 (S.D.N.Y. Dec. 4, 2006). In addition, in cases where the documentation of hours is "vague or incomplete," the court may also reduce the award. E.g., Rosso v. Pi Mgmt. Assocs., L.L.C., 2006 WL 1227671, at *2 (S.D.N.Y. May 3, 2006) (citing In re Painewebber Ltd. P'ships Litig., 2003 WL 21787410, at *4 (S.D.N.Y. Aug. 4, 2003)).

However, the Supreme Court noted in Hensley that "[t]here is no precise rule or formula for making these determinations." 461 U.S. at 436. And, because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," a court may apply an across-the-board percentage cut "as a practical means of trimming fat from a fee application." Carey, 711 F.2d at 1146.

We now examine the hours expended with respect to the two fee applications submitted by Reiter: (1) the first application, which covered the period from the beginning of the case until

the entry of the original judgment; and (2) the second application, which covers the period following entry of judgment (including the appeal) through the present.

       1.  <u>First Application: Time Expended Through Judgment</u>

Reiter's first application relates to the work performed in this case through the entry of judgment on October 24, 2003.  (Docket #92).  Reiter seeks a total of 1,713.30 hours of attorney time.  <u>See</u> Pl. First Mot.; <u>see also</u> Def. Supp. Mem. at 3.  The defendants argue that certain of the hours sought should be eliminated, <u>see</u> Def. Supp. Mem. at 15-23; <u>see also</u> Def. First Mem. at 22-25; others should be reduced, <u>see</u> Def. Supp. Mem. at 23-25; <u>see also</u> Def. First Mem. at 31; and that the hours in general should be subject to an across-the-board reduction for inefficient and excessive expenditures of time.  <u>See</u> Def. Supp. Mem. at 25-33; Def. First Mem. at 25-32. In response to these objections, Reiter explains that, in order to be successful against "a much larger adversary[,] . . . it was necessary for plaintiff's attorneys to devote a lot of time, energy and effort throughout the course of this litigation . . ."  Pl. Supp. Reply Mem. at 7.  Although Reiter addresses many of the defendants' objections, Reiter does not challenge defendants' calculations as to how much time the fee application allots to different tasks  – an exercise Reiter himself did not perform.  Thus, except where otherwise noted, the Court accepts as accurate the summary of time set forth in defendants' papers.

         a.  <u>Hours to be Eliminated</u>

Defendants proffer several categories of time they argue should be eliminated entirely as compensable hours.  Def. Supp. Mem. at 15-23.  We have considered all of them and discuss the following categories below: (1) over 400 hours expended on the plaintiff's motion for summary judgment, <u>see</u> Def. Supp. Mem. at 15-17; (2) more than 70 hours spent on two motions to strike,

see id. at 18-19; see also Def. First Mem. at 24; and (3) several summary time entries that are "inconsistent with contemporaneous records." See Def. Supp. Mem. at 21-22; Def. First Mem. at 22-25.

    i.  Time Spent on Plaintiff's Motion for Summary Judgment.  Both parties submitted motions for summary judgment to Judge Koeltl.  Reiter does not dispute that the time spent on his own motion totaled 477.1 hours (Smith – 102 hours; Lennon – 123.6 hours; London – 251.5 hours).  See Def. First Mem. at 22-24.  This does not include the nearly 230 hours that plaintiff spent in opposing defendants' motion for summary judgment.  Def. Supp. Mem. at 15.

    Defendants argue that "no reasonable attorney, having completed discovery, could believe there were no material disputed facts with regard to whether retaliation was a motivating factor for the TA's decision to transfer plaintiff . . . ."  Id. at 17.  Alternatively, defendants contend that much of the time spent on plaintiff's summary judgment motion is duplicative of the 230 hours spent opposing defendants' motion for summary judgment.  Id. at 15.

    In support of this expenditure of time, Reiter states that he had a "good faith basis," Pl. Reply Mem. at 19, to bring the motion and that the motion gave "Judge Koeltl the opportunity to review the evidence to determine whether or not a trial could have been avoided upon a finding that defendants' stated reason was a subterfuge and defendants did not have a legitimate business reason justifying plaintiff's demotion."  Pl. Supp. Reply Mem. at 17-18.  However, Reiter simply does not address the question of whether he could have reasonably believed, following discovery, that defendants could not dispute material facts in plaintiff's motion.  In denying Reiter's motion, Judge Koeltl dedicated a single paragraph to it, noting that:

>    [the] motion merely recounts facts already presented in the plaintiff's response to the defendants' summary judgment motion.  These responses provide no basis to

> decide as a matter of law that the plaintiff is entitled to judgment, and are
> sufficient only to deny the defendants' motion on the last retaliation claim.

Reiter I, 2002 WL 31190167, at *11.  That Reiter could not prevail on his motion should have

been clear given that defendants had offered three non-discriminatory reasons for the NYCTA's

decision to transfer Reiter in 2000.  See id.  While Reiter argues that these reasons were

"subterfuge," see Pl. Supp. Reply Mem. at 18, he makes no effort to justify his claimed belief

that there was no genuine dispute of fact on this point.  Reiter himself admits the case was an

"entirely fact intensive, circumstantial case."  Pl. First Reply Mem. at 15.

For these reasons, the Court will eliminate the 477.1 hours attributable to plaintiff's

motion for summary judgment.[7]

ii.  Time Spent on Plaintiff's Two Motions to Strike.  Reiter filed two motions to strike

during the course of summary judgment briefing.  See Reiter, 2002 WL 31190167, at *14; see

---

[7] A further reason justifying this elimination is the fact that Reiter's expenditure of more than 700 hours dedicated to summary judgment motion practice is extraordinary.  It is equivalent to a single attorney working 8 hours a day exclusively on the motions, 5 days a week, for more than 4 months.  Having examined the papers relevant to these motions available in the Court file, the Court finds this amount of time excessive.  Notably, courts of this jurisdiction have rejected fee requests relating to a single motion as "excessive" based on much less time than what Reiter has claimed.  See, e.g., Blumenschine v. Prof'l Media Group, LLC, 2007 WL 988192, at *17 (D. Conn. Mar. 30, 2007) (136.2 hours spent researching and drafting plaintiff's summary judgment motion disallowed because the motion "was denied on all grounds"; all but one ninth of the time plaintiff spent opposing the defendant's motion for summary judgment disallowed; and 24.35 hours dedicated to the reply disallowed); Brady v. Wal-Mart Stores, Inc., 455 F. Supp. 2d 157, 212 (E.D.N.Y. 2006) (200 hours plaintiff spent on successful effort to oppose summary judgment is unreasonable; 10% reduction); Nike, 2006 WL 2946472, at *7-8 (more than 241.5 hours on a motion for summary judgment is "excessive" and "not commensurate with this kind of memorandum;" 25% reduction granted); Sea Spray Holdings v. Pali Fin. Group, Inc., 277 F. Supp. 2d 323, 325-26 (S.D.N.Y. 2003) (123.75 hours on a motion to dismiss is "excessive on its face;" 15% reduction applied).  Based on this excessive amount of time, we include the approximately 230 hours attributable to plaintiff's opposition of the defendants' motion for summary judgment on the list of items reflecting excessive hours.  See section II.B.1.b.iv below.

also Motion to Strike, filed Mar. 26, 2002 (Docket #28) ("First Mot. to Strike"); Motion to

Strike, filed May 25, 2002 (Docket #39) ("Second Mot. to Strike").  Defendants have calculated,

and Reiter does not dispute, that nearly 75 hours were spent on these two motions (Smith – 12

hours; Lennon – 7.5 hours; London – 55.25 hours).  See Def. Supp. Mem. at 19; Def. First Mem.

at 24.

    First, on March 26, 2002, Reiter moved to strike portions of the defendants' papers in

support of the motion for summary judgment.  See First Mot. to Strike.  Judge Koeltl denied this

motion as "untimely" and on the merits.  Reiter I, 2002 WL 31190167, at *14.  Plaintiff justifies

the expenditure of time on this motion largely on the ground that Judge Koeltl found, in ruling

on the defendants' motion for sanctions, that Reiter's motion to strike had not been "entirely

baseless" or brought in bad faith.  See Pl. Supp. Reply Mem. at 19; see also Reiter I, 2002 WL

31190167, at *14.  Judge Koeltl's ruling, however, does not address whether it was reasonable

for plaintiff to have brought the motion.

    Reiter filed his second motion to strike also during the pendency of the summary

judgment motions.  See Second Mot. to Strike.  Specifically, Reiter sought to strike as irrelevant

a letter submitted to the Court by defense counsel that had attached the State Supreme Court

decision denying Reiter's Article 78 motion.  See Second Mot. to Strike.  But, as Judge Koeltl

found, the State Supreme Court's decision related to Reiter's federal due process claim and,

indeed, the claim was dismissed based on the state court decision.  Reiter I, 2002 WL 31190167,

at *13; see also Memorandum Endorsement, dated May 28, 2002 (Docket #40) (finding motion

to strike was not "necessary").

In conclusion, the motions to strike related to the summary judgment proceedings were simply unnecessary.  In any event, inasmuch as they were intertwined with the summary judgment motions, and the time spent on those motions was excessive to begin with, no additional time will be permitted for them.[8]

iii.  Time Summaries That Do Not Match Contemporaneous Records.  Reiter concedes that "9.9 hours of Mr. Smith's time . . . should be disallowed because the requested time is not supported by contemporaneous records."  Pl. Supp. Reply Mem. at 21 (citing Def. [Supp.] Mem. at 22).[9]  Likewise, Reiter withdraws his request for compensation for London's time on June 13, 2001, November 7, 2001, and September 2, 2003 – totaling 6.5 hours – because "there are no contemporaneous time records" for those days.  Pl. Supp. Reply Mem. at 21.

Reiter further "concedes" that there is no contemporaneous record for London's work on September 5, 2002, but asks that the Court compensate her 11.5 hours nonetheless.  See id.; see also Declaration of Charlesa E. London, dated Mar. 12, 2007 (attached as Ex. 3 to Supp. Smith App.), ¶ 16.  Reiter acknowledges, however, that the "specific time is not stated."  Id. Inasmuch as the law is clear in this Circuit that applications for attorney's fees must be based on contemporaneous time records, the Court eliminates 11.5 hours attributable to London's work.

---

[8] Because of this ruling, it is unnecessary to address defendants' contention that London's "typing time" should be eliminated as "secretarial" work.  See Def. Supp. Mem. at 22.  It appears that this time is attributable solely to the motions for summary judgment and the motions to strike.  See id. at 22 n.18.

[9] This includes 3.4 hours of Smith's time for September 10 and 18, 2001, and 6.5 hours of Smith's work on September 4-5, 2003.  Pl. Supp. Reply Mem. at 20.  He also concedes that ".9 hours controls for his June 29, 2001 entry."  Id. at 21.

23

Carey, 711 F.2d at 1147 ("contemporaneous time records are a prerequisite for attorney's fees in this Circuit.").

Reiter has conceded that certain hours should be compensated at a 50% rate because they involve travel time.  See Pl. Supp. Reply Mem. at 23.  Instead, for the sake of simplicity, we have simply subtracted 50% of the hours involved.  This amounts to: Smith – 5.15 hours; Lennon – .5 hours; London – 3.25 hours.  Def. Supp. Mem. at 24.

iv.  Summary of Time To Be Eliminated.  Based upon the above, the amounts attributable to each attorney are as follows:

| | Smith | Lennon | London |
|---|---|---|---|
| Billed Hours | 720.50 | 280.30 | 712.50 |
| Hours for Summary Judgment Motion | 47.00 (motion) 55.00 (reply) | 76.70 (motion) 46.90 (reply) | 176.75 (motion) 74.75 (reply) |
| Hours on First Mot. to Strike | 12.00 | 5.8 | 37.25 |
| Hours on Sec. Mot. to Strike | -- | 1.7 | 18.00 |
| Hours Without Adequate Records | 9.90 | -- | 18.00 |
| Travel Time | 5.15 | 0.5 | 3.25 |
| Total Hours After Elimination | 591.45 hours | 148.70 hours | 384.50 hours |

See Pl. First Mot. at 1; Def. First Mem. at 22-25; Def. Supp. Mem. at 15-20; 21-22.

b.  Percentage Reduction

i.  Background.  The defendants make a number of other arguments that the hours claimed by Reiter's counsel are unreasonable – some relating to specifically identified hours, see, e.g., Def. Supp. Mem. at 25-27 nn. 26-29, and some seeking across-the-board reductions

(30% for Smith and 50% for Lennon and London).  See, e.g., Def. Supp. at 25, 28-33.  We now

consider whether there should be a percentage reduction with respect to hours not attributable to

the summary judgment motion or the motion to strike (or the other hours eliminated in the

previous section).

The Second Circuit has stated that a district court is not required to "set forth

item-by-item findings concerning what may be countless objections to individual billing items."

Lunday, 42 F.3d at 134.  Rather, as already discussed, a court may use a percentage deduction

"'as a practical means of trimming fat from a fee application.'"  McDonald ex rel Prendergast,

450 F.3d at 96 (quoting Carey, 711 F.2d at 1146).  "Particularly where the billing records are

voluminous, it is less important that judges attain exactitude, than that they use their experience

with the case, as well as their experience with the practice of law, to assess the reasonableness of

the hours spent."  Alveranga v. Winston, 2007 WL 595069, at *5 (E.D.N.Y. Feb. 22, 2007)

(internal quotations and citations omitted); accord Saunders v. Salvation Army, 2007 WL

927529, at *3 (S.D.N.Y. Mar. 27, 2007) ("Rather than comb through detailed time sheets, a court

can "exclude excessive and unreasonable hours from its fee computation by making an

across-the-board reduction in the amount of hours.").  Case law is replete with instances where

courts have made percentage reductions in the amounts requested.  See, e.g., Alveranga, 2007

WL 595069, at *6 (40%); Sec. Exch. Comm. v. Goren, 272 F. Supp. 2d 202, 213 (E.D.N.Y.

2003) (30%); Elliot v. Bd. of Educ., 295 F. Supp. 2d 282, 286 (W.D.N.Y. 2003) (10%); Tokyo

Electron Ariz., Inc. v. Discreet Indus. Corp., 215 F.R.D. 60, 64-65 (E.D.N.Y. 2003) (10%)

Rotella v. Bd. of Educ., 2002 WL 59106, at *6 (E.D.N.Y. Jan. 17, 2002) (20% - 30%); Sabatini

v. Corning-Painted Post Area Sch. Dist., 190 F. Supp. 2d 509, 522 (W.D.N.Y. 2001) (15%);

Quinn v. Nassau County Police Dep't, 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (20% - 30%);

Perdue v. City Univ., 13 F. Supp. 2d 326, 346 (E.D.N.Y. 1998) (20%); Am. Lung Ass'n v.

Reilly, 144 F.R.D. 622, 631 (E.D.N.Y. 1992) (40%).

A reduction may be applied for "vagueness, inconsistencies, and other deficiencies in the

billing records." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (20% reduction).  In

addition, a reduction may be applied based on limited success obtained.  Hensley, 461 U.S. at

437 (court "may simply reduce the award to account for the limited success"); accord Patterson

v. Balsamico, 440 F.3d 104, 124 n.13 (2d Cir. 2006).

We now discuss the circumstances that relate to the request for an across-the-board

reduction.

ii.  Pursuit of Unsuccessful Claims.  We begin by addressing the extent to which there

should be a reduction based on plaintiff's pursuit of a number of theories and claims that were

ultimately rejected.[10]  The defendants correctly note that Reiter was not successful on a number

of claims.  See Def. Supp. Mem. at 28-32; see also generally Reiter I, 2002 WL 31190167.  But,

as defendants themselves concede, see Def. First Mem. at 28, hours spent on unsuccessful claims

may be awarded if the claims are "'inextricably intertwined' and 'involve a common core of

facts' . . ." Quaratino, 166 F.3d at 425 (quoting Reed v. A.W. Lawrence & Co., 95 F.3d 1170,

1183 (2d Cir. 1996)); accord Murphy v. Lynn, 118 F.3d 938, 952 (2d Cir. 1997) ("A plaintiff's

lack of success on some of his claims does not require the court to reduce the lodestar amount

---

[10] While arguably any reduction based on pursuit of unsuccessful claims could be applied after the lodestar figure has been calculated, see, e.g., Kassim v. City of Schenectady, 415 F.3d 246, 255-56 (2d Cir. 2005), it is of no mathematical significance whether such a reduction is made based on the attorney's hourly rate, the number of reasonable hours, or the product of these two figures.

where the successful and the unsuccessful claims were interrelated and required essentially the same proof."), cert. denied, 522 U.S. 1115 (1998) (citation omitted).  With the exception of plaintiff's due process claim,[11] it does not appear that any of the unsuccessful claims pursued by plaintiff involved exploration during the course of discovery of facts that would not also have been explored anyway as a result of Reiter's pursuit of his successful retaliation claim.  See Def. Supp. Mem. at 31.

In defense of these claims, Reiter provides a "brief background statement" to "demonstrate[] the interrelationship of the claims made . . . in his complaint."  Pl. Supp. Reply Mem. at 26.  The facts given as background, however, fail to describe the events connected to his due process claim.  Thus, he has failed to show that this claim was factually and legally related to any of his other claims.  See Pl. Reply Mem. at 19-22; Pl. Supp. Reply Mem. at 26-27.  Nor does Reiter describe the extent to which he spent time pursuing this claim.  Consequently, some reduction in hours is warranted for this claim.  The time records submitted make it impossible to determine how much was attributable to this particular claim.  Thus, a percentage reduction is the only way to account for it.

iii.  Time Spent After the NYCTA Offered to Reinstate Reiter.  Defendants next seek to eliminate all attorney hours expended between August 14 and September 9, 2003, because they reflect an effort to get Reiter reinstated to a position that had job responsibilities additional to the ones he originally had.  See Def. Supp. Mem. at 20-21.  The NYCTA notes that it had offered to

---

[11] Reiter argued that "the appeals process that he used to review his Year 1999 performance evaluation violated his due process rights. [He] claim[ed] that the NYCTA failed to follow its own internal procedures when he proceeded through the appeals process."  See Reiter I, 2002 WL 31190167, at *13.

reinstate Reiter to his former position as Deputy Vice President of Engineering Services, an offer he initially rejected.  See Letter from Stephen M. Stimell to Judge Conboy, dated Aug. 4, 2003 (reproduced as Ex. A to Supp. Stimell Decl.).

It appears that during this period Reiter's counsel dedicated some 76.75 hours (Smith – 48 hours and London – 28.75 hours), both in and out of court to: (1) prepare for and attend two proceedings before Judge Koeltl; (2) meet with Reiter; (3) research various issues of equitable relief; (4) seek a permanent injunction; and (5) draft Reiter's equitable relief submission, including affidavits.  See Hourly Worksheets 2001-2003 (reproduced as Ex. 2 of Pl. Mot.).  The issues raised in relation to equitable relief included requests not merely related to reinstatement but also with respect to (1) back pay; (2) front pay; (3) seven vacation days to compensate for the time spent at trial; and (4) prejudgment interest.  See Reiter II, 2003 WL 22271223, at *13-16.

With respect to reinstatement, Reiter asserts that his efforts were justified because the NYCTA "offered to reinstate plaintiff to what was then a watered down version of his original position," and that he fought only to "be restored to his original position with his original responsibilities[.]"  Pl. Supp. Reply Mem. at 20.  Judge Koeltl's decision makes clear, however, that Reiter sought to be reinstated to an enhanced VP Engineering position, essentially a promotion.  See Reiter II, 2003 WL 22271223, at *12.  The decision also reflects that in August 2003, the NYCTA "agreed that [Reiter] could be returned to his prior position as DVP Engineering Services with the core responsibilities he had prior to the transfer."  Id.  Given that much of what Reiter was seeking was unnecessary, the fees sought for this phase of the case are excessive.

28

iv.  Evidence of Excessive Time Spent.  There are a number of individual examples of entries that reflect excessive time spent on various tasks.  For example: (1) on April 21, 2001, 3 hours by Smith preparing waivers of service for deposition witnesses; (2) on June 23, 2001, 2.5 hours by Smith drafting five deposition notices; (3) 80.25 hours total by the three attorneys for reviewing and digesting deposition transcripts, see Def. Supp. Mem. at 26 & nn. 27-29; (4) 19.25 hours of London's time spent over two weeks on "research relating to and drafting voir dire," see id. at 27; see also London's Hourly Worksheets Nov. 14, 2002-Nov. 27, 2002; and (5) 230 hours attributable to opposing the defendants' motion for summary judgment.  See section II.B.1.a.i & n.8 above (discussion of his motion for summary judgment); see generally Hourly Worksheets 2001-2003.  The Court agrees that these hours are beyond what was required for the tasks involved.

v.  Vague Entries.  Plaintiff's application contains a number of vague entries.  Most notably, there are a number of entries listed only as "[t]rial [p]reparation," which together amount to close to 90 hours.  See Smith's Hourly Worksheets, Jan. 13, 2003-Jan. 22, 2003; Lennon's Hourly Worksheets, Jan. 10, 2001 & Jan. 14, 2001; London's Hourly Worksheets, Jan. 10, 2003 & Jan. 17, 2003.  Where there are vague entries of this kind, sometimes referred to as "block billing," the entries make it impossible for the Court to determine if the "trial preparation" involved compensable tasks (such as drafting questions for witness examinations) or non-compensable tasks (such as photocopying of exhibits).  See, e.g., Molefi v. Oppenheimer Trust, 2007 WL 538547, at *7-8 (E.D.N.Y. Feb. 15, 2007) ("because block billing renders it difficult to determine whether, and/or the extent to which, the work done by . . . attorneys is duplicative or unnecessary, courts apply percentage cuts where there is a substantial amount of

29

block billing in a fee request.") (15% reduction) (internal quotations and citations omitted);

Williamsburg Fair Hous. Comm. v. New York City Hous. Auth., 2007 WL 486610, at *5

(S.D.N.Y. Feb. 14, 2007) ("Where, as here, time entries are duplicative or vague, an

across-the-board reduction in the number of hours spent, with a concomitant decrease in the fee

award, is well within the court's discretion.") (approximately 50% reduction); accord Alveranga,

2007 WL 595069, at *5 & n.13 (where "entries in plaintiff's fee application combine tasks in a

way that makes it difficult for the Court to assess whether the time logged was reasonable,"

percentage reduction was justified); Klimbach v. Spherion Corp., 467 F. Supp. 2d 323, 332

(W.D.N.Y. 2006) (10% reduction for numerous "block entries"); Aiello v. Town of Brookhaven,

2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005) (time entries "rife with vague entries for

'conferences,' 'meetings,' and 'research,' without any further explanation of those services,"

making it difficult to "parse out whether the number of hours spent on the work performed was

reasonable") (10% reduction).  Accordingly, some reduction is required by this circumstance as

well.

      c.  Conclusion as to Percentage Reduction

      There is also a larger problem with respect to the hours being sought for the first fee

application in this case.  This case was not an unusually complex one.  It involved approximately

six depositions by plaintiff, no discovery disputes that involved formal motion practice; and a

six-day trial.  See Def. First Mem. at 2.  With the elimination of time related to Reiter's summary

judgment motion, his two motions to strike and the lack of contemporaneous records, as

described in section II.B.1.a. above, the overall number of hours sought for the first fee

application is still 1,124.65 hours.  A review of case law suggests that even this figure is higher

than what has been claimed or allowed in employment discriminations case with a single plaintiff and a short trial.  See, e.g., Blumenschine, 2007 WL 988192, at *15 (994.8 hours billed by six attorneys and a paralegal in association with a six-day jury trial); Petrovits v. New York City Transit Auth., 2004 WL 42258, at *6 (S.D.N.Y. Jan. 7, 2004) (court approved 885.22 hours for two attorneys and six-day jury trial).

After considering each of the circumstances discussed in section II.B.1.b.i through section II.B.1.b.v above, the Court concludes that the hours remaining after the eliminations in section II.B.1.a. above should be reduced by 15% for each attorney.  Accordingly counsel's reasonable hours for their work from March 7, 2000 through entry of judgment following the jury trial are as follows: (1) Smith – 502.73 hours; (2) Lennon – 126.40 hours; and (3) London – 326.83 hours.  The total, 955.96 hours, while still high, is in line with a reasonable number of hours to expend on a case of this kind.

### d.  The Request for Overall Reduction for Lack of Success

Arriving at this total "does not end the inquiry," however.  Hensley, 461 U.S. at 434. There are other considerations that may lead a court to adjust the fee upward or downward.  Id. The lodestar figure may be adjusted on the basis of the "results obtained." Id.  "Indeed 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436).[12] Thus, where a party prevails, but obtains far lesser relief than might have been expected, case law reflects that a court consider an adjustment in the lodestar amount.  See, e.g., Parrish v.

---

[12] Once again, it does not matter mathematically whether the reduction is taken against the hours expended alone or against the hours expended multiplied by the hourly rate.

Sollecito, 280 F. Supp. 2d 145, 173 (S.D.N.Y. 2003) (where plaintiff was awarded $500,000 in

punitive damages, but received $15,000 in compensatory damages, "far less than she sought[,]"

award was reduced by 10%).

　　　　As was noted in Kassim v. City of Schenectady:

　　　　a district judge's authority to reduce the fee awarded to a prevailing plaintiff below the
　　　　lodestar by reason of the plaintiff's "partial or limited success" is not restricted either to
　　　　cases of multiple discrete theories or to cases in which the plaintiff won only a nominal
　　　　or technical victory.

415 F.3d 246, 256; accord Farrar, 506 U.S. at 114 (requiring court to consider "'the amount of

damages awarded as compared to the amount sought'" in evaluating the reasonableness of a

claim for attorney's fees) (quoting City of Riverside v. Rivera, 477 U.S. 561, 585 (1986)

(Powell, J., concurring)); Access 4 All, 2005 WL 3338555, at *6 ("in the Second Circuit, fees

may be reduced based on the limited success of the plaintiff, even if the case was litigated on the

basis of a single, unitary theory, and even if the plaintiff recovered more than nominal relief.")

(citing Kassim, 415 F.3d at 253-55).  Defendants argue that a reduction should be taken based on

the degree of success obtained by Reiter.  See Def. Supp. Mem. at 40-41.

　　　　Reiter's complaint did not reflect specific amounts sought for damages.  His arguments

with respect to pain and suffering damages at trial, however, were sufficient to convince the jury

to award him $140,000 in such damages.  These damages were reduced, however, to $10,000 by

remittitur.  See Reiter II, 2003 WL 22271223, at *8-11.  For equitable relief, Reiter was

reinstated to his former position as he sought but was denied a number of other items,

specifically: (1) seven vacation days he used to attend this trial; (2) back pay for missed raises or

pension benefits; and (3) prejudgment interest.[13]  Id. at *13-16.  He also did not obtain a

permanent injunction to prevent future retaliation.  Id. at *15.  As noted, Reiter's main victory

was that he was awarded reinstatement to his former position.  While this represents a substantial

degree of success, it certainly does not reflect complete success on his claims given the other

categories of damages or relief pursued by Reiter.

Plaintiff argues that his "primary objective in his litigation was reinstatement."  See Sur-

Sur-Reply at 3.  Indeed, language in Kassim suggests that a court should consider the plaintiff's

"main objective" in analyzing the degree of success.  See 415 F.3d at 255.  The Court finds it

difficult to determine precisely what the "main objective" was in this case.  Certainly, to the

extent plaintiff was seeking damages, his case was largely a failure.  But to the extent he was

seeking reinstatement, it was a success.  Notably, this was not a case – as is true of many

employment discrimination suits – where plaintiff was without a job and thus reinstatement was

critical to his livelihood.  Rather, plaintiff had a job at precisely the same salary of the job to

which he sought reinstatement.  In these circumstances, the Court concludes that money damages

was the more important – if not the main – objective to Reiter.  While no significant reduction is

warranted, the Court concludes that the 15% reduction suggested by defendants, see Def. Supp.

Mem. at 41, is too high.  It concludes, rather, that Reiter should obtain 90% of the fees he seeks,

and thus the Court reduces the award by 10% based on Reiter's limited success.  The total

number of hours for each attorney is: (1) Smith – 452.46 hours; (2) Lennon – 113.76 hours; and

(3) London – 294.15 hours.

_____

[13] Reiter was also denied front pay, but it appears that he sought this pay only in the event
he was not given reinstatement.  See Sur-Sur-Reply at 3.

e. Conclusion as to First Application

Plaintiff should be awarded $199,828.75 with respect to the First Fee Application. This figure is derived from the following calculations:

| | | | |
|---|---|---|---|
| Smith: | 452.46 hours | x $275 | $124,426.50 |
| Lennon: | 113.76 hours | x $275 | $31,284.00 |
| London: | 294.15 hours | x $150 | $44,122.50 |
| TOTAL: | 860.37 hours | | $199,833.00 |

2. Second Application: Entry of Judgment to Present

Plaintiff seeks fees from the date of the judgment against him through the present, a period that encompasses the preparation of his first fee application, the Court's ruling on that fee application, Reiter's appeal of the ruling, and the preparation of the supplemental fee application. Since filing the application, Reiter has submitted time sheets reflecting hours spent on additional work: (1) researching and drafting his reply memorandum; (2) reviewing defendants' application for a writ of certiorari; and (3) responding to defendants' Sur-Reply. See Hourly Worksheets (reproduced as Ex. 4 to Smith Supp. Reply Aff.); see also Sur-Sur-Reply, at 1 (Hourly Worksheets attached).

It is settled that the time spent on a fee application is itself compensable. See, e.g., Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183-84 (2d Cir. 1996); Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist., 71 F.3d 1053, 1059 (2d Cir. 1995). However, "if the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the judge may refuse further compensation or grant it sparingly." Valley Disposal, 71 F.3d at 1059 (citing Gagne v. Maher, 594 F.2d 336 (2d Cir. 1979), aff'd on other grounds, 448 U.S. 122 (1980)). The Court

34

has attempted to piece together the various time records – a task that Reiter himself did not

perform – and concludes that Reiter seeks fees for 474.2 hours for attorneys on the fee

application.  This breaks down as follows:

| | Smith | Lennon | London |
|---|---|---|---|
| First Fee Application | 103 [14] | 29.3 | ---- |
| Appeal | 110.2 | 32.3 | ---- |
| Second Fee Application | 44 | 13.5 | ---- |
| Supplemental Reply | 62.9 | 56.7 | 13.50 |
| Writ of Certiorari | 4.50 | -- | -- |
| Sur-Sur-Reply | 4.30 | -- | -- |
| Total | 328.90 | 131.80 | 13.50 |

See Def. Supp. Mem. at 34-35; Sur-Reply at 1; Sur-Sur-Reply Hourly Worksheets, Jan. – Mar.

2007 (reproduced as Ex. 4 to Smith Supp. Reply Aff.).  Defendants make numerous challenges

to these fees.  See Def. Supp. Mem. at 34-39; see also Sur-Reply.

　　　　a.  Hours to Be Eliminated

　　　　Certain hours submitted by Reiter on this application should not be compensated.  First,

Smith spent 17.3 hours on a motion to reconsider this Court's elimination of 8.1 hours of his

time.  See Def. Supp. Mem. at 35-36.  This includes 9.3 hours on a motion to reconsider the

decision and another 8 hours on the objections to the denial of this motion.  Id. at 35.   This time

---

[14] This figure removes six hours that Smith says he expended on paralegal tasks.  See Pl. Supp. Mem. at 1 n.1 (six hours of paralegal work).  These hours are added back in at the rate of $100 per hour as reflected in section II.B.2.c below.  The hours billed for secretarial services are discussed in the next section.

is not compensable for two reasons.  As defendants note, "[e]xpending 17.3 hours to recover 8.1 hours is unreasonable."  Def. Supp. Mem. at 36.  Moreover, no reasonable attorney would have moved for reconsideration initially.  The subject of the motion for reconsideration – the elimination of certain hours – was a topic that Reiter had not addressed in the briefing on the original motion and thus he had plainly waived any objection.  As this Court held and the Second Circuit affirmed: "Reiter had the opportunity to address this discrepancy in his reply papers yet did not do so."  Reiter IV, 2004 WL 2072369, at *3; see also Reiter V, 457 F.3d at 233 n.2.

Second, the 8 hours (Smith – 5.5; Lennon – 2.5) Reiter spent researching the viability of appealing this Court's November 15, 2006 Order is unreasonable.  See Order (Docket #124). That Order required only that Reiter respond to defendants' discovery requests on the subject of his fee application.  Reiter's argument that the Order "might violate a previous Order[,]" see Pl. Supp. Reply Mem. at 30, and/or presented "an issue of privilege and confidentiality," id., was addressed in this Court's denial of Reiter's motion for reconsideration.  See Memorandum Endorsement, dated November 16, 2006 (Docket #125).  As the Court then explained: Reiter was free to file a privilege log.  Id.  Thus, any time Reiter spent "researching the implications of disclosing other representation," Pl. Supp. Reply Mem. at 30, was unnecessary and should not be compensated.  Accordingly, 5.5 hours of Smith's time and another 2.5 hours of Lennon's time will be deducted from the hours sought.

Third, defendants contend that 13 hours a Ms. St. Villiere spent typing Smith's contemporaneous billing notes should be eliminated as secretarial duties.  See Def. Supp. Mem. at 35.  While Reiter responds that Villiere was hired as a paralegal, see Pl. Supp. Reply Mem. at 29, this fails to address the contention that the tasks she performed were secretarial.  Defendants

36

correctly point out, see Def. Supp. Mem. at 22-23, 35, that secretarial time is compensable only if it is the custom in the market in which fees were sought to bill such time separately, Missouri, 491 U.S. at 296-97 – a point that Reiter has not addressed in his papers. In any event, case law supports exclusion of this time. See, e.g., Marisol A. ex rel. Forbes v. Guiliani, 111 F. Supp. 2d 381, 390 (S.D.N.Y. 2000) ("secretarial services are part of overhead and are not generally charged to clients"); Ginsberg v. Valhalla Anesthesia Assocs., P.C., 1998 WL 19997, at *4 n.3 (S.D.N.Y. Jan. 20, 1998).[15]

In sum, the amounts attributable to each attorney following the elimination of these hours are as follows:

|  | Smith | Lennon | London | Secretary |
|---|---|---|---|---|
| Billed Hours | 328.90 | 131.80 | 13.50 | 13.00 |
| Motion to Reconsider | 17.30 | -- | -- | -- |
| Objections to Court's Nov. 15, 2006 Order | 5.50 | 2.50 | -- | -- |
| Typing | -- | -- | -- | 13.00 |
| Total Hours After Elimination | 306.10 | 129.30 | 13.50 | 0 |

---

[15] The Court rejects defendants' argument that Reiter should not have researched the question of whether the district court had jurisdiction to award fees for hours spent on the appeal. Def. Supp. Mem. at 36. Also, the court will allow the 1.5 hours spent by Lennon at the 2006 status conference. See Carey, 711 F.2d at 1146 ("Under section 1988, prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist.").

_____   b.  Claims as to Excessive Hours

The defendants have pointed to a number of areas in which apparently excessive hours

have been sought.  See Def. Supp. Mem. 37-39.  The Court agrees that the following items

appear to be greater than what could reasonably have been required:

1.  12.8 hours (Smith – 6.9; Lennon – 5.9) searching files in response to defendants' 2006 discovery requests.  Id. at 37.

2.  68.7 hours (Smith – 50.1; Lennon – 18.6) of research performed by Smith and Lennon in 2003 in connection with the first fee application and the appeal, see id. at 38, and 25.6 additional hours (Smith – 21.4; Lennon – 4.2) of research performed by Smith and Lennon from 2004-2006.  Id. at 39.  The Court finds this excessive in light of the nature of the briefing produced by the plaintiff.[16]

3.  28 hours for strategy discussions between Smith and Lennon from 2003-2006.  See id. at 37.

4.  43.3 hours (Smith – 37.6; Lennon – 5.7) spent preparing for oral argument before the Second Circuit.  Id. at 37.

5.  5.4 hours of Lennon's time reviewing Smith's 2003 reply brief.  See id. at 39; see also Sur-Reply at 2.

6.  126.2 hours (56 – Smith; 56.7 – Lennon; 13.5 – London) for drafting Reiter's supplemental reply brief on the current motion.  See Hourly Worksheets from January 22-March 13, 2007 (reproduced as Ex. 4 to Smith Supp. Reply Aff.).  While new arguments were made in the supplemental reply brief, the fact that there were "approximately 400 pages" of exhibits, see Sur-Sur-Reply, at 2, is of little significance in that the exhibits attached consisted largely of past filings in this matter, past letters between the parties, a transcript, as well as affirmations and past complaints from plaintiff's counsel – in other words, documents with which Reiter's counsel was presumably familiar.  See Trs. of Local 807 Labor-

_____

[16] This second category of research encompasses the time Smith and Lennon spent researching market rates in connection with both the first and second fee applications.  See Def. Supp. Mem. at 38-39.  As defendants note, the 7.8 hours spent on March 27, 2004 is excessive, inter alia, because it "yielded one case cited in the First Application, . . . which this Court rejected as inapposite[]," see id., and the remaining 13.6 hours spent on researching this issue for the second fee application yielded "three cases, one National Law Journal article, and one bankruptcy case report . . . ."  Id. at 39.

<u>Mgmt. Health & Pension Funds v. River Trucking & Rigging, Inc.</u>, 2005 WL 3307080, at *4 (E.D.N.Y. Dec. 2, 2005) ("42.25 hours is an unreasonable amount of time to have spent researching and drafting the Reply Brief").[17]

In addition, there is the question of whether the 448.9 hours remaining in the fee application following the elimination of hours reflected in the previous section is appropriate in light of the hours reasonably expended on the case as a whole.

A frequently cited case, <u>Davis v. City of New Rochelle</u>, 156 F.R.D. 549 (S.D.N.Y. 1994), found that the award courts had made for time spent on fee applications ranged between 8% and 24% of the award for time spent on the case itself. <u>Id.</u> at 561. More recent cases are similarly within this range. <u>See</u>, <u>e.g.</u>, <u>Baird v. Boies, Schiller & Flexner LLP</u>, 219 F. Supp. 2d 510, 525 (S.D.N.Y. 2002) (awarding on fee application 10% of total attorney's fees awarded); <u>see</u> <u>also</u> <u>cf.</u> <u>Irish v. City of New York</u>, 2004 WL 44454, at *8 (S.D.N.Y. Mar. 10, 2004) (awarding six hours for work on fee application where 210 hours in overall fees or 3%). Thus, in one recent case, a litigant sought 33% of the overall fees as expenses for the fee application. <u>See</u> <u>Knoll v. Equinox Fitness Clubs</u>, 2006 WL 2998754, at *3-4 (S.D.N.Y. Oct. 20, 2006). Based on the fact that the fee sought was large in proportion to the fees involved in the underlying case, the court reduced the award to "approximately ten percent of the main fee award." <u>Id.</u> at *4.

In terms of raw hours, the 448.9 hours at issue are far greater than what courts have found to be a reasonable expenditure of time for an attorney's entire fee application. <u>See</u>, <u>e.g.</u>, <u>Brady</u>, 455 F. Supp. 2d at 212 (rejecting 257 hours spent on fee litigation as "surprisingly high"); <u>Murray ex rel Murray v. Mills</u>, 354 F. Supp. 2d 231, 241 (E.D.N.Y. 2005) (150 hours for fee

---

[17] In addition, 4.5 hours of Lennon's time recorded as "rev'd file" on November 1, 2003 is hopelessly vague and supports a reduction. <u>See</u> Def. Supp. Mem. at 36.

application is "grossly amplified" and noting that even in a complex case, a fee application should take about 30 hours).  The Court recognizes that these cases, unlike Reiter's, do not involve an appeal and thus the Court will not reduce this figure simply to come in line with cases that involved only district court work.  Nonetheless, the Court notes that, with the hours attributed to the appeal subtracted from the total the number of hours sought for the fee application – 331.79 hours –  is unreasonable in light of all the factors discussed above.  It represents an attorney working 40 hour weeks for more than 8 weeks.  Having carefully examined the submissions from plaintiff, the Court find that these hours far exceed what is appropriate.

c.  <u>Conclusion as to the Second Application</u>

In light of all the reasons given above, the Court will reduce the time sought by each counsel for the second fee application by 40%.  Accordingly, the totals allowed for each attorney on the second fee application are as follows:

| | | | |
|---|---|---|---|
| Smith: | 183.66 hours | x $275 | $50,506.50 |
| Lennon: | 77.58 hours | x $275 | $21,334.50 |
| London: | 8.1 hours | x $150 | $1,215.00 |
| TOTAL: | 269.34 hours | | $73,056.00 |

We add to this figure $600 to account for the paralegal time expended by Smith for a total of $73,656.00 in fees.

C.  <u>Expenses and Costs</u>

An award of attorney's fees should "'include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'"  <u>LeBlanc-Sternberg v. Fletcher</u>,

143 F.3d 748, 763 (2d Cir. 1998) (quoting United States Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989)); accord id., 143 F.3d at 763 (citing Kuzma v. IRS, 821 F.2d 930, 933-34 (2d Cir. 1987)).  Case law reflects that the expenses recoverable under Title VII and other fee-shifting statutes are not limited to the costs taxable by statute and rule such as 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d)(1); and Local Civil Rule 54.1.  See, e.g., Disney Enters., Inc. v. Merchant, 2007 WL 1101110, at *8 (N.D.N.Y. Apr. 10, 2007); Raniola, 2003 WL 1907865, at *7-8; Shannon v. Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 304-05 (S.D.N.Y. 2001).

Costs associated with mailings, photocopies, and court fees are compensable.  See, e.g., Molefi, 2007 WL 538547, at *8; Levy v. Powell, 2005 WL 1719972, at *12 (E.D.N.Y. July 12, 2005) (allowing recovery of costs for "photocopies, deposition transcripts, expert witness fees, travel, filing fees, messenger services, mailings, and facsimiles."); Lawson ex rel. Torres v. City of New York, 2000 WL 1617014, at *5 (S.D.N.Y. Oct. 27, 2000) (reimbursing, as part of attorney's fee award, costs for photocopying and transcripts).  A litigant may not, however, recover for expenditures associated with "routine office overhead."  Pinner v. Budget Mortgage Bankers, Ltd., 336 F. Supp. 2d 217, 222 (E.D.N.Y. 2004), aff'd, 169 Fed. Appx. 599 (2d Cir. 2006).

### 1.  Costs Related to the First Fee Application

Reiter requests expenses relating to the period covered by the first fee application totaling $12,090.72.  See Pl. Reply Mem. at 23; Pl. Supp. Reply Mem. at 39.  Defendants find these costs to be "excessive," Def. Supp. Mem. at 43, and object to the following elements of Reiter's stated costs:

   1.  photocopies (commercial)...........................................$  818.27

   2.  photocopies (at office)...............................................$  585.20

   3.  postage.......................................................................$  161.02

   4.  courier........................................................................$    85.00

   5.  local facsimile ...........................................................$    48.00

   6.  stenographer fee........................................................$  433.35

See id. at 43-44; see also Pl. Supp. Reply Mem. at 39-41.

The defendants argue that $1,403.47 for photocopies should be excluded because "there is no indication that these copies were 'used or received in evidence'" as required by the Local Rule, and in any event, "$585.20 was for making 2,926 copies on November 12, 2003, long after dispositive motions had been made and after the trial was completed."  Def. Supp. Mem. at 43-44; see also Sur-Reply at 2.  As already noted, however, a plaintiff recovering expenses is not limited to costs taxable by statute or rule.  Also, the expenditure occurred shortly before the fee application and Reiter represents that the materials copied "includ[e], but [are] not limited to, correspondence, notes, complaint(s) and motions," see Receipt, dated Nov. 12, 2003 (reproduced in Ex. 3 to Pl. First Mot.), accumulated "during the course of and in furtherance of Plaintiff's litigation."  See Pl. Supp. Reply Mem. at 40.

Defendants' reliance on Local Civil Rule 54.1(c) to defeat Reiter's claims for postage and courier services, see Def. Supp. Mem. at 44, is also misplaced.  Kuzma, 821 F.2d at 933 (photocopying, postage, covers, exhibits, typing, transportation and parking fees "clearly represent the reasonable costs of litigation"); see also Disney, 2007 WL 1101110, at *9 ("While

such items as delivery charges and postage are not typically regarded as taxable costs under

28 U.S.C. § 1920, . . . they are recoverable under a fee shifting statute . . . .") (citations omitted).

With respect to facsimile charges, defendants argue that "there is no basis to charge $1

per fax where the cost incurred is that of a local telephone call." See Def. Supp. Mem. at 43.

Reiter has not come forth with evidence that such charges are currently "ordinarily charged" to

clients. Accordingly, this charge will be eliminated.

Finally, the defendants cite to Local Civil Rule 54.1(c)(2) to argue that a "stenographer

fee . . . is not chargeable to the [defendants]" because "it appears that the deposition transcript of

Joseph Siano was not relied on by the Court in ruling on dispositive motions and was not used at

trial." Id. at 44. Once again, defendants incorrectly rely on an irrelevant rule and thus their

objection must be rejected.

Accordingly, following the reduction of the $48.00 charge for faxes, the recoverable

costs associated with the Reiter's First Application total $12,042.72.

### 2. Costs Related to the Second Fee Application

Reiter also seeks payment of the $3,397.60 in costs stemming from his appeal which the

Second Circuit awarded to him, see Order, dated Sept. 5, 2006 (reproduced as Ex. 6 to Supp.

Smith Aff.), "plus $208.80 in copying costs, [a] $14.57 Staples charge and $17.04 [in] Federal

Express fees." Pl. Supp. Reply Mem. at 42. Defendants do not contest that they owe the

$3,397.60 awarded by the Second Circuit, see Def. Supp. Mem. at 43, although it is unclear as of

this time whether this sum has been paid.[18] They assert that there is no basis to allow additional

---

[18] It apparently had not been paid as of the filing of plaintiff's reply memorandum. See
Pl. Supp. Reply Mem. at 42.

expenses given the Second Circuit's award of costs.  See Def. Supp. Mem. at 44.  But, once

again, this argument ignores the fact that costs awarded generally by statute or rule differ from

those available in an attorney's fees application.  Accordingly, plaintiffs are entitled to an award

of these expenses.

In sum, defendants shall reimburse Reiter $3,638.01 for costs incurred during the Second

Fee Application.

<u>Conclusion</u>

Accordingly, Reiter's application (Docket ## 93, 126) is granted.  He is entitled to an

award as follows:

| | |
|---|---|
| Attorney's fees for the first application: | $199,833.00 |
| Attorney's fees for the second application: | $73,656.00 |
| | |
| Costs for the first application: | $12,042.72 |
| Costs for the second application: | $3,638.01 |
| TOTAL | $289,169.73 |

Because the record is unclear as to the extent to which defendants have paid some of these fees

or costs already, the parties are directed to confer on this question and to present, within 10 days,

an appropriate judgment for entry by the Court.[19]

---

[19] To the extent the parties believe the Court has made any mathematical or calculation errors in this Opinion, such errors should be brought to the Court's attention by means of a letter at the same time.

Dated:  September 25, 2007
   New York, New York

               _____
               GABRIEL W. GORENSTEIN
               United States Magistrate Judge

Copies sent to:

Gregory G. Smith, Esq.
Gregory Smith & Associates
225 Broadway, Suite 3601
New York, NY 10007-1901

Steven M. Stimell, Esq.
Jay P. Warren, Esq.
Bryan Cave LLP
1290 Avenue of the Americas
New York, NY 10104

Dated: September 25, 2007
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Gregory G. Smith, Esq.
Gregory Smith & Associates
225 Broadway, Suite 3601
New York, NY 10007-1901

Steven M. Stimell, Esq.
Jay P. Warren, Esq.
Bryan Cave LLP
1290 Avenue of the Americas
New York, NY 10104